UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECTICEL FOAM CORP., ET AL.,      :
                                  :
          Plaintiffs,             :
                                  :
          v.                      :      Civil Action
                                  :      No. 98-2523 (GK)
U.S. DEP'T OF JUSTICE, ET AL.,    :
                                  :      **FILED**
          Defendants.             :
                                  :      JAN 3 1 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION

Plaintiffs are Recticel Form Corporation ("Recticel") and several individuals[1] who bring this action to prevent Defendants, the United States, the Federal Bureau of Investigation ("FBI"), and the United States Department of Justice ("DOJ"), from releasing documents obtained in the course of Defendant FBI's criminal investigation of Plaintiffs' alleged violation of federal hazardous waste disposal laws. The matter is now before the Court on Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, for the reasons stated below, the Court **grants** Plaintiffs' Motion and **denies**

_____

[1] Individual Plaintiffs are: (1) Steve Murphy, a former employee of Recticel and the subject of the FBI's criminal investigation; and (2) Jane and John Doe, who were witnesses and who provided the FBI with information in aid of its investigation.

1

(N)  81

Defendants' Motion.

**I. BACKGROUND**[2]

This is an action to reverse and set aside the February 11, 1998 decision of the FBI to disclose 1,700 pages of documents obtained in the course of its criminal investigation of some of the Plaintiffs. Plaintiffs are Steve Murphy and Recticel, an individual and a corporation who were the subject of the FBI investigation, as well as several witnesses who provided confidential information to the FBI in the course of its investigation. Plaintiffs proceed under the Administrative Procedure Act, 5 U.S.C. § 706, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a(b).

**A.   The FBI's Investigation of Plaintiffs**

Beginning in the early 1990's, the FBI commenced an investigation of alleged criminal waste handling and disposal at the Recticel foam rubber plant in Morristown, Tennessee. During the course of the investigation, Plaintiffs John and Jane Doe,[3] some of whom were current or former employees of Recticel during the time period in question, cooperated with the FBI by providing information concerning Recticel's waste disposal activities.

In 1992, the Government indicted Recticel and Mr. Murphy, as

---

[2] The facts herein are either undisputed or clearly identified as the allegations of one of the parties.

[3] The parties agreed to keep the names of these Plaintiffs confidential.

2

well as five other employees of Recticel, on numerous felony counts of criminal hazardous waste handling and disposal.  Prior to trial, a federal magistrate ruled that the materials disposed of were not "hazardous waste" as a matter of law and therefore not subject to federal regulatory requirements.  As a result, on July 12, 1994, the indictments against Recticel and its employees were dismissed with prejudice.[4]

### B. The FBI's Disclosure Decision

In March and June of 1997, certain insurance companies wrote the FBI requesting release of documents within its files pertaining to its investigation of Plaintiffs.  The companies sought the information in connection with the insurance coverage litigation pending between them and Recticel in state court in Tennessee.  That litigation concerned liability for clean-up costs associated with Recticel's waste disposal activities.

The insurance companies made their request pursuant to regulations known as "Touhy" regulations,[5] which set forth

---

[4] Recticel did, however, plead guilty to one count of improper record keeping under state and federal law.

[5] These regulations are authorized by 5 U.S.C. § 301, which is commonly referred to as the "housekeeping statute," and which provides that:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding

procedures to be followed in response to demands from the Department of Justice and its employees for "production or disclosure" of information for state and federal court proceedings.  28 C.F.R. §§ 16.21 et seq.  Among other things, the regulations prohibit current and former DOJ employees from disclosing information contained in DOJ files for any federal or state proceeding in which the United States is not a party, unless certain enumerated criteria are satisfied and unless approval is given by the proper DOJ official.  28 C.F.R. 16.22.[6]  Disclosure is prohibited if, among other things,

———————————

> information from the public or limiting the availability
> of records to the public.

5 U.S.C. § 301.  The regulations were adopted following the Supreme Court's decision in Touhy v. Ragen, 340 U.S. 462 (1951), holding that, in general, federal officials could not be held in contempt for failing to disclose information demanded.  Id. at 469.

[6] Section 16.22 provides in part:

General prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party.

(a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

"disclosure would violate a statute..."  28 C.F.R. 16.26(b).[7]

In response to the request for documents by the insurance companies, the FBI identified approximately 1,700 pages of materials in its investigatory files.  Those materials include "summary reports of investigation; transcriptions of interviews as recorded on FD-302s (this is a form used by the FBI to report the substance of interviews...); reports of investigative activity recorded on FD-302s; other documents on which factual information is recorded;...and relevant surveillance videotapes and photographs made during the FBI's investigation."  See Administrative Record ("A.R."), Tab 7 at 5.

On February 11, 1998, the FBI advised the insurance companies by letter that it would agree to disclose most of the 1,700 pages of documents in its investigatory files and set forth the rationale for that decision.  See id.  The FBI explained that disclosure of any record from FBI files would ordinarily violate the federal Privacy Act, which provides in relevant part:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--[the statute lists twelve exceptions, codified as §§ 552a(b)(1)-(12)].

---

[7] See note 9 infra for the text of regulation 29 C.F.R. § 16.26, which sets forth the criteria that must be met before DOJ documents can be disclosed.

5 U.S.C. § 552a(b).

The FBI indicated that it could nevertheless disclose most of the requested documents if the state court in Tennessee overseeing the insurance litigation against Recticel ordered it to disclose those materials. The letter explained that one of the exceptions to the Privacy Act's prohibition on disclosure permits disclosure as long as it would be "pursuant to the order of a court of competent jurisdiction," 5 U.S.C. § 552a(b)(11):

> Any disclosure of a record from FBI files is restricted by the Federal Privacy Act...The exception normally relied upon by the FBI for its daily operations and dissemination of information is the "routine use" exception . . .; however, disclosure of an FBI record in civil litigation in which the United States is not a party is not a lawful routine use for the FBI's information. The only Privacy Act exception available in litigation such as yours is found at 5 U.S.C. 552a(b)(11), "pursuant to the order of a court of competent jurisdiction. . . ."

A.R., Tab 7 at 4.

The letter further explained that the state court in which the insurance litigation was pending against Recticel qualified as a "court of competent jurisdiction." Id. ("A court of record which has jurisdiction over the subject matter of the case qualifies as a 'court of competent jurisdiction.'"). Accordingly, the FBI enclosed with its letter a proposed Agreed Order for entry by the state court overseeing the insurance litigation, which directed the FBI to release the records, and which agreed to submit the United States government to the jurisdiction of the state court. Id. at

4, 6 ("For this reason I have provided you with a draft order which includes language which satisfies the FBI's obligations imposed by the Privacy Act. . .For purposes of issuance and implementation of the court order, I agree to accept the issuing state court's jurisdiction over me in my official capacity...").

The February 11, 1998 decision letter also emphasized that "even with a court order in effect, there are certain categories of information which the FBI cannot or will not divulge.   These categories are listed, generally, in 28 C.F.R. § 16.26 [i.e., the Touhy regulations]."   A.R. Tab 7, at 4.   The FBI set forth a "disclosure plan" aimed at ensuring that disclosure would be in compliance with these Touhy requirements.[8]   Id.

On September 14, 1998, the state court judge signed the Agreed Order, directing the FBI to release the requested records.[9] Recticel objected to entry of this order.

Plaintiffs filed this action on October 16, 1998, to prevent Defendants from releasing the investigatory files.   On October 21,

---

[8] Specifically, the FBI made clear that even with a court order in effect, it still could not release the following types of documents from its investigatory files: "purely internal FBI documents - for example, intra office or interoffice communications, planning and strategy documents..."; "property, documentary or otherwise, which was contributed to the FBI by third parties or Defendants"; "materials, documentary or otherwise, if the release would violate the instructions in 28 C.F.R. 16.26"; and "any documents obtained by the Federal Grand Jury subpoena."   Id.

[9] The Agreed Order was signed by the Hon. John Wilson of the Hamblen County, Tennessee Circuit Court.

1998, parties agreed not to release or disclose any of the files at issue in this case pending final resolution on the merits.    The matter is now before the Court on the parties motions for summary judgment.

## II. STANDARD OF REVIEW

The parties have filed motions for summary judgment.  Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Furthermore, because this action is a challenge to the FBI's decision to disclose documents, it, like other agency actions, is reviewed under the arbitrary and capricious standard of the APA. See 5 U.S.C. § 706(2)(A).

## III. ANALYSIS

### A.    The Court Has Subject Matter Jurisdiction

Plaintiffs have brought what is commonly referred to as a "reverse FOIA" action.  Defendants maintain that the Court lacks subject matter jurisdiction over Plaintiffs' action because neither FOIA nor the Privacy Act provides a cause of action to enjoin the FBI from releasing its own investigative files.    See Defs.' Memorandum in Support of its Motion for Summary Judgment ("Defs.' Memo.") at 18-21 ("One of plaintiffs' causes of action is styled a

'reverse' FOIA action to prohibit the disclosure of exempt documents. Plaintiffs cite the FOIA statute...as the jurisdictional basis for this claim. No such jurisdiction exists."). In arguing that Plaintiffs lack a cause of action to enjoin disclosure, Defendants appear to misapprehend the nature of reverse FOIA actions and of Plaintiffs' Complaint.

Reverse FOIA actions are brought under the APA. Consequently, any cause of action arises thereunder. There is no question that the FBI may be enjoined from disclosing its files if its decision to disclose is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Chrysler Corp. v. Brown, 441 U.S. 281, 317-19 (1979).

Plaintiffs have properly alleged that the FBI's decision is "contrary to law" in violation of the APA in this case. Specifically, Plaintiffs allege that the FBI's decision is "contrary to law" because: (1) the FBI files are exempt under FOIA Exemption 7(C), and therefore, (2) cannot be disclosed because the Privacy Act bars disclosure of any "record which is contained in a system of records" that falls within a FOIA exemption. 5 U.S.C. § 552a(b).

Defendants do not dispute the first point, namely that the FBI files at issue constitute Exemption 7(C) material.[10]   See Defs.'

---

[10] Exemption 7(C) protects information compiled for law enforcement purposes which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

Memo. at 40 ("The records at issue clearly fall within Exemption 7 of FOIA").

Furthermore, Plaintiffs are correct about the second point, namely that the Privacy Act prohibits agencies from disclosing material that is FOIA-exempt.  The relevant section of the Privacy Act provides:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--[the statute lists twelve exceptions, codified as 552a(b)(1)-(12)].

5 U.S.C. § 552a(b).  One of those exceptions is for information "_required_ under 552 of this title [_i.e._, required under FOIA]."  5 U.S.C. § 552a(b)(2).  It is well-settled that this provision prohibits agencies from voluntarily making public any record not required to be released under FOIA (_i.e._, exempt under FOIA).  _Bartel v. Federal Aviation Administration_, 725 F.2d 1403, 1411-1413 (D.C. Cir. 1984); _see also_ _Brown v. FBI_, 658 F.2d 71, 74 (2ᵈ Cir. 1981)("[I]t must be noted that the Privacy Act absolutely prohibits the non-consensual release of information...except as required under the FOIA...Therefore, the decision to disclose or withhold the requested information depends entirely on the interpretation and application of the claimed exemptions."); _Plain Dealer Publishing Co. v. United States Dept. of Labor_, 471 F.Supp. 1023, 1030 (D.D.C. 1979) ("[t]he net effect of [552a(b)(2)] is to permit disclosure

where the FOIA requires it, but to prohibit disclosure where the FOIA allows the agency to refuse to disclose [i.e., falls within an exemption]"); see also Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1184-1185 (8th Cir. 2000).

In light of the foregoing, the Court concludes that Plaintiffs have properly asserted a cause of action under the APA to enjoin disclosure of the FBI's investigatory files.  They have alleged that the FBI's decision is "contrary to law" under the APA because: (1) the investigative file at issue is FOIA Exemption 7(C) material, and (2) FOIA-exempt materials are, in turn, not disclosable under the Privacy Act.  The Court therefore has subject matter jurisdiction to hear this case.

### B. Plaintiffs Have Standing

Defendants also argue that Plaintiff Recticel must be dismissed from this case because it lacks standing.  Specifically, Defendants reason that because Recticel is a corporation, and not an individual, it cannot possibly have interests that fall within the "zone of interests" sought to be protected by the statutes forming the basis of its APA action, namely FOIA and the Privacy Act.[11]

---

[11] Defendants argue that Recticel lacks standing to bring this case in part because its interests are not within the "zone of interests" of the housekeeping statute authorizing the Touhy regulations, namely 5 U.S.C. § 301.  See Defs. Memo. at 21-24. This argument confuses the focus of the standing inquiry, which centers on the zone of interests sought to be protected by the "statutory provision whose violation forms the legal basis for [Plaintiffs'] complaint." Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 883 (1990).   The "legal basis for [Plaintiffs']

Defendants argue that those statutes aim to protect the interests of individuals only.

As a preliminary matter, the Court notes that even if Recticel lacked standing to challenge the FBI's disclosure decision, it would not affect the Court's resolution of this case on the merits, as it is undisputed that the remaining individual Plaintiffs, all of whom are current or former employees of Recticel, have standing to bring this suit.  See Defs.' Memo. at 28.

Furthermore, it is clear that Recticel itself does have standing to bring this case.  The core goal of the standing inquiry is to ensure that a plaintiff bringing an action has enough of a stake in the case to litigate it properly.  To demonstrate standing in the context of the APA, a plaintiff must typically show that she has suffered an injury in fact that is fairly traceable to the defendant's conduct; that a court can provide relief to redress the injury; and that the injury in fact is "arguably within the zone of interests to be protected or regulated by the statute" in question.[12]

---

complaint" in this case is the Privacy Act and FOIA.  Plaintiffs do not allege that disclosure violates the housekeeping statute authorizing the Touhy regulations.

[12] The standing analysis in the APA context actually comprises two separate inquiries, one constitutional, under Article III of the United States Constitution, and one prudential, under the APA. To secure constitutional standing, all plaintiffs need show is some injury in fact that is fairly traceable to the defendant's action and redressable by the relief requested.  See Allen v. Wright, 468 U.S. 737 (1984).  There is no dispute that Recticel has constitutional standing in this case.  Indeed, there cannot be, as the proposed disclosure of the FBI's criminal investigative file

<u>Data Processing Serv. Orgs. v. Camp</u>, 397 U.S. 150, 152-153 (1970).

Here, the only dispute is as to whether Recticel's interests fall within the "zone of interests" protected by the statutes in question.  Defendants argue that the Privacy Act permits only "individuals" and not "corporations" to sue thereunder.  The term "individual" in the Privacy Act is defined as a "citizen of the United States or an alien lawfully admitted for permanent residence."  5 U.S.C. § 552a(a)(2).  Defendants maintain that because Recticel is a corporation, and not an "individual" within the meaning of the Privacy Act, its interests <u>a fortiori</u> do not fall within the Privacy Act's "zone of interests."

Defendants' arguments are unpersuasive for several reasons.  First, Plaintiffs rely on both FOIA and the Privacy Act as statutory bases for their APA claim.  Although the Privacy Act's definition of "individual" does not encompass corporations, the FOIA's definition of "person" does so explicitly.  5 U.S.C. § 551(2) (" 'person' includes an individual, partnership, corporation, association...").  Indeed, the Department of Justice's own Privacy Act Overview recognizes that FOIA's definition of "person" is "much broader" than the definition of "individual" in the Privacy Act.  <u>See</u> U.S. Dep't

would directly affect Recticel.

   To secure judicial review under the APA, Plaintiffs must also show that the injuries they assert fall within the "zone of interests" of the relevant statutes.  That is the dispute in this case.

of Justice, Freedom of Information Act Guide & Privacy Act Overview 669 (2000).   Therefore, even if Recticel's interests are not within the zone of interests under the Privacy Act, they "arguably are within the zone of interests" contemplated by FOIA.   Data Processing, supra.

Second, Defendants' view that Recticel's interests are not within the "zone of interests" of the Privacy Act because Recticel is a corporation and cannot sue thereunder conflates the analytically distinct concepts of "standing" and a "cause of action."   See Davis v. Passman, 442 U.S. 228, 239-240 (1979).   The Supreme Court has recognized that there may be standing to sue under a statute, even if it is ultimately decided that there is no "legal interest" or valid cause of action.   See Data Processing, 397 U.S. at 152-153, n.1.   Thus, the fact that Congress did not create a cause of action for corporations under the Privacy Act does not necessarily mean that Recticel's interests do not fall within the "zone of interests" contemplated by that Act.   It is sufficient for a standing analysis that Plaintiffs' interests "arguably" fall within the zone of interests contemplated by the statute.   Indeed, this Circuit has recognized that "[a]s the Supreme Court has recently reaffirmed, the zone of interests test is generous and relatively undemanding.   '[T]here need be no indication of congressional purpose to benefit the would-be plaintiff.'"   Animal Legal Defense Fund v. Glickman, 154 F.3d 426, 454 (D.C. Cir.

14

1998)(internal citations omitted).

In light of these principles, and given that the privacy interests of Recticel and its own current and former employees--all of whom are "individuals" under the Privacy Act and Plaintiffs in this matter--are directly threatened by the proposed disclosure, the Court concludes that Recticel's interests fall within the "zone of interests" sought to be protected by the Privacy Act.

### C.   Defendants' Disclosure Decision is Arbitrary, Capricious and Contrary to Law Because it Violates the Privacy Act and the <u>Touhy</u> Regulations.

#### 1. Disclosure Would Violate the Privacy Act.

In Defendants' February 11, 1998 decision letter, the FBI acknowledged that the Privacy Act would prohibit disclosure unless it occurred pursuant to one of the Act's twelve enumerated exceptions. <u>See</u> A.R., Tab 7 at 5.  Indeed, the Privacy Act provides that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--[the statute lists twelve exceptions, codified as 552a(b)(1)-(12)].

5 U.S.C. § 552a(b).

The FBI concluded that the only exception that would apply in this case, and would therefore authorize what would otherwise be a prohibited disclosure, was found in § 552a(b)(11), which permits disclosure as long as it is required by a "court of competent

jurisdiction." To that end, the FBI prepared an Agreed Order, which was entered by the state court in Tennessee, directing the FBI to disclose the requested documents.

Subsequently, and in the course of the briefing of the pending motions, Defendants acknowledged that the state court order directing the FBI to disclose the requested documents was not valid, and they no longer rely on it as a basis for disclosure of the investigative file.[13] See Defs.' Motion at 17; Pls. Reply at 2. Significantly, as the FBI recognized in its decision letter, the state court order was the only basis upon which disclosure could be supported under the Privacy Act. Absent a valid order from a "court of competent jurisdiction," there are simply no grounds upon which to conclude that disclosure of the investigative materials would not violate the Privacy Act. Disclosure does not fall within any of the remaining enumerated exceptions to the Privacy Act, and Defendants do not dispute this.[14] Accordingly, the Court concludes that

---

[13] Defendants have not provided any explanation for this unusual turn of events.

[14] At several points in their briefs, Defendants argue that even though none of the Privacy Act's twelve exceptions appears to apply in this case, the Privacy Act is apparently still not violated because disclosure will comply with the "disclosure plan" set forth in the February 11, 1998 decision letter. See e.g., Defs.' Reply at 3 ("[U]nder the terms of the disclosure plan challenged here, [the FBI] will review the pertinent records prior to their release and will disclose only those records, or parts thereof, which are not restricted from disclosure by the Privacy Act.").

disclosure of the FBI's investigative file would violate the Privacy Act.

## 2. Disclosure Would Violate The Touhy Regulations

The FBI submits that disclosure of the investigative file is appropriate, notwithstanding its concession that the sole basis underlying its original decision--the state court order--is invalid. Specifically, the FBI maintains that the Touhy regulations serve as an independent ground for disclosure, and that its "disclosure plan" complies with these regulations, particularly 28 C.F.R. § 16.26, which prohibits disclosure of, inter alia, confidential sources and federal grand jury material.[15] Defendants' view that the Touhy

---

That the FBI will comply with the disclosure plan set forth in its letter, and review all documents before disclosing them, does not make disclosure consistent with the Privacy Act.  As the FBI decision letter makes clear, the disclosure plan is premised on the validity of a court order directing disclosure in the first instance.  See A.R., Tab 7 at 5 ("Even with a court order in effect, there are certain categories of information which the FBI either cannot or will not divulge.").  The disclosure plan is aimed at ensuring that the "certain categories of information which the FBI either cannot or will not divulge," "even with a court order in effect," are not disclosed.

[15] 28 C.F.R. 16.26 provides in part:

(a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

regulations independently support disclosure of the investigative file is untenable for several reasons.

First, it misapprehends the rationale of the February 11, 1998 decision.  As described earlier, the decision letter explained that the FBI must comply with the Privacy Act in disclosing its files, and that the only way to comply would be to disclose those materials pursuant to a valid order from a "court of competent jurisdiction" directing disclosure.  The disclosure plan the FBI now independently relies upon was premised on a valid court order, and is not in and

---

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),

(2) Disclosure would violate a specific regulation,

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

of itself a sufficient basis on which to justify disclosure.  See A.R., Tab 7 at 4 ("Even with a court order in effect, there are certain categories of information which the FBI ...will not divulge. These categories are listed, generally, in 28 C.F.R. 16.26 [i.e., the Touhy regulations]."   Absent a valid court order, there is simply no supporting rationale for disclosure.

Second, far from being in compliance with the Touhy regulations, disclosure would, in fact, violate those regulations. The Touhy regulations prohibit any disclosure that would violate a valid statute or other law:

> Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:
>
> (1) Disclosure would violate a statute, or a rule of procedure, such as the grand jury secrecy rule..."

28 C.F.R. § 16.26(b)(1).   Consequently, because disclosure would violate a statute, namely the federal Privacy Act, it would also violate DOJ's own Touhy regulations.[16]

Third, disclosure contravenes other terms of the Touhy regulations.  For example, in proceedings where the United States is not a party (as is the case here), disclosure of DOJ files is permissible only in response to a "demand" by a state or federal court.  28 C.F.R. § 16.22(a).  The regulations define "demand" as a

---

[16] Furthermore, it is axiomatic that regulations cannot provide for disclosure that exceeds the statutory limits on an agency's discretion to disclose information.

"subpoena, order, or other demand...of a court or other authority."
28 C.F.R. 16.21(a)(2).   In practice, a "demand" usually take the
form of a subpoena, and courts consistently interpret this term to
mean subpoena or some other type of Court order.   See, e.g., Kwan
Fai Mak v. FBI, 252 F.3d 1089, 1092 (9th Cir. 2001)(concluding that
state court's "advisory opinion" did not constitute a "demand" for
information under Touhy and stating that "in the absence of an
actual demand (in the form of, e.g., a state court subpoena), that
the federal government disclose...the necessary steps have not been
taken under the Touhy regulations...").

In this action, there was simply no "demand" for information.
Written requests by three insurance companies to the FBI do not
constitute a "demand" for purposes of the Touhy regulations.   The
FBI cannot voluntarily disclose its information absent a demand from
a court. Accordingly, in the absence of an actual demand from a
court that the FBI disclose its investigative file, the FBI's
disclosure decision is in violation of the Touhy regulations.

In summary, because the proposed disclosure would contravene
both the Privacy Act and the Touhy regulations on which Defendants
rely, the FBI's decision to release its investigative file is
arbitrary, capricious and contrary to law in violation of the APA.

**IV. CONCLUSION**

For the foregoing reasons, the Court **grants** Plaintiffs' Motion
for Summary Judgment and **denies** Defendants' Motion.   An Order will

issue with this Opinion.


Jan. 31, 2002
DATE

Gladys Kessler
GLADYS KESSLER
UNITED STATES DISTRICT JUDGE

**Copies to**:
Roger Joseph Marzulla
Marzulla & Marzulla
1350 Connecticut Avenue, NW
Washington, DC 20036

Paul S. Padda
U.S. Attorney's Office
Civil Division
555 Fourth Street, NW
Washington, DC 20001